## COMMONWEALTH *vs.* THOMAS J. McDUFFY.

Middlesex.   Jan. 8. — April 8, 1879.   COLT & ENDICOTT, JJ., absent.

A person, who by false and fraudulent representations obtains from another a sum of money which is no more than is rightfully due him from the latter, cannot be convicted of obtaining property by false pretences, under the Gen. Sts. c. 161, § 54; and, at the trial of an indictment against him on that statute, evidence of the amount of the debt to him is admissible.

INDICTMENT on the Gen. Sts. c. 161, § 54, for obtaining money of Cornelius Sweetser by false pretences.

At the trial in the Superior Court, before *Allen,* J., it appeared that, by virtue of an agreement dated October 3, 1872, Sweetser became the trustee of certain funds for Susan R. Howard and her two daughters; that in the fall of 1874, Sweetser, by an arrangement with the *cestuis que trust,* bought a parcel of land in Lowell with a portion of the trust funds, and took a deed thereof in trust for the persons above named.

It also appeared that the defendant was to build a house upon this land, and was to pay all bills for materials used in said house with money which was to be given to him by Mrs. Howard, from time to time, upon the presentation by him to her of bills for such materials; that the money was to be sent to Mrs. Howard at Lowell by Sweetser, from Saco, Maine, where he resided; that the final settlement for the building of the house was made on September 16, 1875; that at that time a draft, drawn by the cashier of a bank in Saco upon a bank in Boston, for $1000, dated November 2, 1875, payable to Mrs. Howard or order, and indorsed by her, was given by her to Sweetser, and by the latter delivered to the defendant, and a certain sum was returned to Mrs. Howard by the defendant, and his bill was thus settled.

Sweetser testified that he had collected certain notes mentioned in the agreement of trust, and had deposited the money in a bank at Saco with his own funds; that he purchased the draft above mentioned with the funds so held by him in said bank, and sent the draft to Mrs. Howard, and charged upon his book $1000 as paid out from the trust fund ; that his purpose in sending the draft was that it might be used to pay for the house, and that the balance, after the payment of the defendant's bill, was to be paid out upon other bills contracted for the house.

The defendant contended, and asked the judge to rule, that, as a matter of law, the money paid to the defendant, at the time of the settlement, was not the money of Sweetser within the allegation of the indictment; but the judge refused so to rule, and the defendant excepted.

The defendant contended that he could not be convicted upon the indictment, because, upon the settlement at which it was alleged he made the false representations set forth, he had been allowed nothing for his services in building the house; that he was entitled to receive for his personal services the sum of $650; and that, if the sum he received in fact was not more than enough to pay him for the bills actually paid and for his services, then he was not guilty of false pretences, even if he had made untrue statements, because he had defrauded no one.

When the defendant was on the witness stand, he was asked what sums he had actually put into the house upon certain bills; but the judge ruled the inquiry immaterial. The defendant's counsel then suggested that it might be important to the defendant to prove that he only received money enough to pay him what he actually paid out, and what was actually due for labor and materials furnished at the time of the settlement. But the judge ruled that, if the defendant actually made false representations as to what went into the house as materials, he might be guilty, even if he had not received more than was due him.

The defendant asked the judge to rule as follows: " 1. If the defendant only received, at the time of the settlement with Sweetser, money enough to pay what was actually due him, then this indictment cannot be maintained. 2. If the defendant made representations only for the purpose of getting the

money due him, and not for the purpose of obtaining money **not** due him, then this indictment cannot be maintained."

The judge declined so to rule; but ruled that, if the defendant made the false representations for the purpose of obtaining money that he believed to be due to him, and believed that he had a right so to obtain the money, the indictment could not be sustained.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*T. H. Sweetser & G. A. A. Pevey*, for the defendant.

*J. F. Brown,* Assistant Attorney General, (*C. R. Train*, Attorney General, with him,) for the Commonwealth.

LORD, J. The only question in this case upon which we feel called to give an opinion is, whether the instructions requested by the defendant, or either of them, should have been given.

It is not easy to understand why, in the view of the law as stated by the presiding justice, evidence of the exact amount of indebtedness to the defendant was excluded; for such evidence would be apparently competent upon the issue of the defendant's belief. Nor do we see how the question whether the defendant believed that he had a right so to obtain the money can of itself be a decisive test of his guilt or innocence. We understand the use of the word "right" to signify legal right, and not moral right, although its use might perhaps tend to mislead the jury, and lead them to suppose that, in order to acquit the defendant, he must have believed that he had a moral right to lie and deceive for the purpose of obtaining what was justly due him. We do not, however, decide the case upon any criticism of the particular form of language in which the instruction was given, nor upon any apparent inconsistency between the instructions as given and the rules previously laid down as to the admissibility of evidence.

We understand the broad and naked question to be presented, whether the offence of obtaining property by false pretences can be committed when the party charged obtains no more than is rightfully due him, by whatever fraudulent means or devices he thus obtains it. This leads to an inquiry into the essential elements of the offence. In *Commonwealth* v. *Drew*, 19 Pick. 179, Morton, J., says that to constitute the statute offence four things

mnst concur: 1. There must be an intent to defraud; 2. There must be actual fraud committed; 3. False pretences must be used for the purpose of perpetrating the fraud; and, 4. The fraud must be accomplished by means of the false pretences made use of for the purpose. And in *Commonwealth* v. *Jeffries*, 7 Allen, 548, 568, Bigelow, C. J., says that the intent to defraud is part of the substance of the issue, and must be proved.

We are not aware that the precise question now presented has ever been considered by this court; and we have not been able to find any decision in any court of last resort that a party may be convicted of the crime of obtaining property by false pretences, when he has obtained nothing in value which he would not be entitled to as of right.

In *Rex* v. *Williams*, 7 C. & P. 354, C., a servant of B., obtained property belonging to A. by means of falsehood, to enable B. to obtain payment of a debt owed by A.; and it was held that if C. did not intend to defraud A., but only to enable B. to obtain what was due to him, he could not be convicted; and Coleridge, J., in that case told the jury, that, if the prisoner did not intend to defraud the prosecutor, but only to put it in his master's power to compel him to pay a just debt, they ought not to convict, and added, that it was not sufficient that the prisoner knowingly stated that which was false, and thereby obtained the property, but that they must be satisfied that the prisoner at the time intended to defraud the prosecutor.

In *People* v. *Thomas*, 3 Hill, 169, the defendant was charged with obtaining property by false pretences, the fraudulent pretence being that a note of the prosecutor which he had for the amount had either been lost or burned, which was known by him to be false, and afterward he negotiated the note to a third person. The court held that a false representation tending merely to induce one to pay a debt previously due from him was not within the statute against obtaining property by false pretences; the court saying, "A false representation, by which a man may be cheated into his duty, is not within the statute." And in *Commonwealth* v. *Henry*, 22 Penn. St. 253, Woodward, J., makes use of almost precisely the same language.

In *People* v. *Getchell*, 6 Mich. 496, the defendant was charged with procuring the indorsement of the prosecutor to a promis-

sory note by fraudulently pretending that a former note for the same amount so indorsed was destroyed; and, in his defence, he offered to show that the prosecutor was bound by an agreement with him to indorse for him to an amount larger than both the notes, and that the money obtained on the notes was used for the purposes contemplated by the agreement. It was held that such evidence should be received as tending to disprove the presumption of an intent to defraud.

We are, of course, not to be understood as deciding that a mere pretence of indebtedness by the person from whom the property is obtained is sufficient; nor is anything which we decide to be construed as in conflict with the well-established rule of law that a party is to be presumed to intend all the natural and ordinary consequences of his acts; and fraud and falsehood are always evidence tending to show that the party had a dishonest purpose; and the question for the jury to decide is whether, upon all the facts and circumstances, the defendant had an intent to defraud, and effected that purpose, and whether, in order to accomplish it, he made use of fraudulent representations, and succeeded by means of such representations.

The defendant should therefore have been allowed to offer evidence in support of the facts upon which his prayers are predicated, and the jury should have been instructed that, if proved, the defendant was entitled to an acquittal; and for this reason the exceptions must be sustained.

Upon the other point in the case we make no decision. Under the provisions of the Gen. Sts. *c.* 172, § 12, the indictment might be supported if either the actual or constructive possession of the money, or the general or special property in the whole or any part of it was in the person named in the indictment. We do not think the facts upon this point are so fully and carefully stated in the bill of exceptions as to require us to say, as matter of law, that neither the actual nor constructive possession, nor the general nor special property in the money obtained, was not in Sweetser. That question will be open upon another trial, when the evidence relating to it may be varied, or may be more fully developed.                    *Exceptions sustained.*